**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                   )
KERRIE DOYLE,                      )
                                   )
            Plaintiff,             )
                                   )    Civil Action
       v.                          )    No. 19-10591-PBS
                                   )
MERZ NORTH AMERICA, INC.,          )
                                   )
            Defendant.             )
_____)

**MEMORANDUM AND ORDER**

September 18, 2019

Saris, C.J.

**INTRODUCTION**

Plaintiff Kerrie Doyle ("Doyle") brings this action against her former employer Defendant Merz North America, Inc. ("Merz") alleging gender discrimination and retaliation in violation Massachusetts law. Merz moves to dismiss the complaint for lack of personal jurisdiction and improper venue. In the alternative, Merz asks the Court to transfer the case to the Eastern District of North Carolina. Doyle opposes all relief sought by Merz. After hearing, the Court **DENIES** Merz's motion (Dkt. No. 7).

**FACTUAL BACKGROUND**

When determining whether it can exercise personal jurisdiction over a defendant without an evidentiary hearing,

1

the Court conducts a prima facie review of the jurisdictional facts. See Negrón-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 24 (1st Cir. 2007). The Court will consider facts alleged in pleadings, affidavits, and exhibits. See Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 979 (1st Cir. 1986). The Court "take[s] specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The Court also will consider facts that the defendant proffers as long as they are uncontradicted. See id.

Accordingly, the following factual background comes from Doyle's Complaint and two declarations, two affidavits from Merz's Associate Director of Human Resources, Kim Lobell, and the exhibits to those documents. The facts are assumed to be true, either because they are affirmatively alleged by Doyle or they are affirmatively alleged by Merz and are otherwise uncontradicted.

I. **Merz's Business**

Merz sells various medical devices and products across the United States, including in Massachusetts. Merz is headquartered and incorporated in North Carolina. It is registered to conduct business and has a registered agent in Massachusetts. Merz has six employees based in Massachusetts that work in its

injectables division. Merz does not lease or own any office space in Massachusetts.

## II. Doyle's Employment

Doyle worked for Merz as a saleswoman from September 2015 through May 2018. From September 2015 to September 2017, Doyle worked in Merz's injectables division and was based in Massachusetts. From September 2017 until May 2018, Doyle worked in Merz's device division as the Device Territory Manager with a sales area covering Massachusetts, Maine, New Hampshire, Vermont, Rhode Island, and part of Connecticut. Doyle alleges that she also was based in Massachusetts after her transfer to the device division.[1] Following her transfer, Doyle's direct manager was Jack Patten, whose supervisor was Mike Floegel. Patten resided in and worked from New Jersey. Floegel resided and worked in North Carolina.

While Doyle worked in the device division, she estimates that 80% of her customers were located in Massachusetts. Two of the three sales that she made when she worked on the device team were to customers in Massachusetts. In addition, Doyle was physically present in Massachusetts as she worked "on a daily or

---

[1]   The parties dispute whether Doyle was based in Massachusetts or New Hampshire during her employment. The record is unclear on this point, but for the purposes of this motion the Court takes Doyle's allegation that she was based in Massachusetts as true. See Mass. Sch. of Law, 142 F.3d at 34.

3

almost daily basis" in Massachusetts and "constantly" communicated with Patten by phone and email while she worked in Massachusetts. Dkt. No. 20-2 ¶ 9.

### III. Discrimination and Retaliation

Doyle alleges that Patten treated Doyle differently than her male colleagues. He met with Doyle's male co-workers to help them succeed but did not and would not do the same for her. He continuously criticized Doyle and compared her to other men on the team. He offered one-on-one training to Doyle's male co-workers, but not to her. He co-traveled with male employees to client meetings but refused to co-travel with her. Doyle specifically alleges that Patten did not co-travel with her for meetings in Massachusetts, New Hampshire, and Maine even though she repeatedly requested that he co-travel with her in October 2017. In contrast, Doyle claims Patten co-traveled with male employees to Florida, Georgia, West Virginia, and Washington D.C. Because Patten would not co-travel with Doyle, she would have him participate in many of her sales calls via conference calls.

On November 3, 2017, Doyle received a phone call from Floegel after she had not sold a device in the prior month. Floegel told Doyle that she had to sell a device in November "or else," which she interpreted as a threat of termination. Dkt. No. 1-2 ¶ 21. However, male co-workers were not threatened with

4

termination even though they did not sell a product during a month. And when Doyle requested a larger sales territory that was more comparable to those of her male co-workers, Merz refused.

On November 22, 2017, Doyle received a "Letter of Professional Concern" because of her quarterly sales performance. Doyle received the letter even though six weeks remained in the quarter. Doyle ultimately sold three devices in that quarter, and her sales goal was four devices. Two of those sales were to Massachusetts customers. No male co-workers with a similar sales history received Letters of Professional Concern. (The day before she received the letter, Doyle called Merz's Ethics Line to report Patten for gender discrimination.

On December 6, 2017, Patten gave credit to a male co-worker for a sale that Doyle fostered. When Doyle called Patten, he "screamed at her, told her that 'she wasn't playing the game' or words to that effect, and hung up on her." Id. ¶ 35.

On February 5, 2018, Doyle had a mediation call with Patten and Floegel in response to her Ethics Line complaint. During that call, Floegel "harassed, intimidated and cross-examined" Doyle and did not attempt to mediate the dispute. Id. ¶ 39.

On February 14, 2018, Doyle had another mediation call with Patten, Floegel, and a representative from Merz human resources. In that call, Floegel and the human resources representative

5

belittled and bullied Doyle. On February 16th, Doyle visited her doctor because of various health conditions caused by work-related stress. At the doctor's recommendation, Doyle took a leave of absence from Merz from February 17 until May 14.

When Doyle returned to work in May, Patten continued his hostile and abusive behavior until Doyle resigned on May 25, 2018.

## **Personal Jurisdiction**

### I. **Legal Standard**

In a diversity case, the Court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). "[I]n order to avoid unnecessary consideration of constitutional questions," the Court first determines whether it can exercise jurisdiction under the long-arm statute. Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (quoting SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017)). The plaintiff bears the burden of establishing jurisdiction over the defendant. Negrón-Torres, 478 F.3d at 23. And in a specific jurisdiction inquiry, as here, the Court "examine[s] each legal claim discretely." Matos v. Seton Hall Univ., 102 F. Supp. 3d 375, 380 n.2 (D. Mass. 2015).

## II. Discussion

Doyle concedes that Merz, a North Carolina corporation with limited operations in Massachusetts, is not subject to general jurisdiction in Massachusetts. Instead, she argues that the Court can exercise specific jurisdiction over Merz.

### A.   Massachusetts' Long-Arm Statute

Massachusetts' long-arm statute allows a court to exercise personal jurisdiction over a defendant when a claim arises from "transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a). The test for this determination has two parts: (1) whether the defendant attempted to participate in the Commonwealth's economic life; and (2) whether the transacted business was a "but for" cause of the harm. Tatro v. Manor Care, Inc., 625 N.E.2d 549, 552-53 (Mass. 1994).

In general, "the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy [the transacting business] requirement." Id. Moreover, the Court broadly construes "transacting." Access Now, Inc., 280 F. Supp. 3d at 291. Through Doyle, Merz sold and attempted to sell medical devices to buyers in Massachusetts. She held sales calls with the company's Massachusetts customers and traveled throughout the state to try sell its products. See Cossart v. United Excel Corp., 804 F.3d 13, 19 (1st Cir. 2015) (finding that

7

unsuccessful solicitations of business qualify as business transactions under Massachusetts' long-arm statute). Therefore, Merz has transacted business in Massachusetts for purposes of the long-arm statute.

"[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." Tatro, 625 N.E.2d at 553. This test "boils down to a 'but for' causation test which asks 'did the defendant's contacts with the Commonwealth constitute the first step in a train of events that resulted in the [harm].'" Access Now, 280 F. Supp. 3d at 291 (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992) (cleaned up)). For employment-related claims, this "but-for" test is satisfied where the claims arise from the employee's work performed in Massachusetts. See Cossart, 804 F.3d at 19. Here, Doyle's claims of discrimination and retaliation arise out of her work for Merz in Massachusetts. Doyle alleges that Patten refused to support her in the same way he did male team members and, specifically, that he would not co-travel with her to visit with Massachusetts clients. She also alleges she was criticized for making only two sales to Massachusetts clients. And, once she complained about this unequal treatment, Doyle alleges she was harassed by Patten,

Floegel, and other Merz employees while she continued to work in Massachusetts.

Accordingly, Massachusetts' long-arm statute permits the Court to exercise jurisdiction over Merz.

**B. Due Process Inquiry**

The due process analysis requires the Court to determine that a defendant has minimum contacts with the forum state such that a suit would not offend traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The First Circuit utilizes a three-part analysis to determine if sufficient contacts exist to exercise specific personal jurisdiction: relatedness, purposeful availment, and reasonableness. See Sawtelle, 70 F.3d at 1388-89.

**1. Relatedness**

Relatedness "focus[es] the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum." Id. at 1389. The analysis of the "arising from" prong of the long-arm statute essentially addresses the relatedness inquiry element under the Due Process Clause. See Geis v. Nestlé Waters N. Am., Inc., 321 F. Supp. 3d 230, 239 (D. Mass. 2018). Causation principles structure the relatedness inquiry, but the inquiry is a "flexible, relaxed standard." Sawtelle, 70 F.3d at 1389 (quoting Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994)). The Court does not use proximate cause per

9

se when the parties' relationship results from a contractual or business association. See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715 (1st Cir. 1996). And in employment disputes, an employment's predominant location is critical in deciding issues of personal jurisdiction. See Cossart, 804 F.3d at 20-21; see also Winner v. Tryko Partners, LLC, 333 F. Supp. 3d 250, 264 (W.D.N.Y. 2018) (exercising personal jurisdiction where plaintiff performed majority of job responsibilities within district); Malavé-Torres v. Cusido, 839 F. Supp. 2d 501, 509 (D.P.R. 2012) (same).

While the parties contest the extent to which Doyle worked in Massachusetts, at this stage, Doyle's allegations control the analysis. Doyle states that she worked in Massachusetts on an almost daily basis. She alleges that she emailed and called Patten frequently while she was in Massachusetts. Doyle claims Patten would participate in sales calls that she led with Massachusetts clients rather than traveling with her to see those clients in person. And she states that she was in Massachusetts on behalf of Merz when she was harassed and retaliated against by Patten and Floegel. Although Doyle may not have been in Massachusetts for every alleged discriminatory and retaliatory incident, she has alleged a sufficient connection between Merz's contacts with the state and her claims for the Court to exercise personal jurisdiction. See Matos, 102 F. Supp.

3d at 380-81 (exercising personal jurisdiction in Massachusetts over New Jersey university that discriminated against student from Massachusetts); see also Nowak, 94 F.3d at 711 (affirming exercise of personal jurisdiction in Massachusetts over Hong Kong company in wrongful death action where the death occurred in Hong Kong). And, even if Doyle resided in New Hampshire during her employment as Merz claims, the Court would reach the same conclusion because the due process inquiry turns on the defendant's contacts with the forum, not the location of the plaintiff's residence. See Int'l Shoe, 326 U.S. at 316.

### 2. Purposeful Availment

The purposeful availment inquiry has two focal points: voluntariness and foreseeability. Nowak, 94 F.3d at 716. To this end, the Court must review the totality of the defendant's claim-related contacts with the forum. See Sawtelle, 70 F.3d at 1391. For the Court to find that the defendant purposefully availed itself of the forum, these contacts must not be "random, fortuitous, or attenuated contacts." Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

Voluntariness is satisfied if the defendant's contacts with the forum state are "not based on the unilateral actions of another party or a third person." Nowak, 94 F.3d at 716. Here, Merz's contacts with Massachusetts are voluntary. First, Merz

11

had "an obvious financial interest" in employing Doyle to sell Merz products in Massachusetts. Id. at 717. Doyle tried to sell Merz's products in Massachusetts, and she met half of her quarterly goal for fall 2017 by selling Merz's products in Massachusetts. Second, Merz's employment agreement with Doyle is necessarily not a unilateral action because Merz was a party to the contract.[2] See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 68 (1st Cir. 2014).

Meanwhile, the foreseeability element is satisfied when the defendant's contacts with the forum are such that it should reasonably anticipate being haled into court there. Nowak, 94 F.3d at 716; see also Cossart, 804 F.3d at 21-22 (finding it foreseeable that defendant could be haled into Massachusetts court where it contracted with an employee based in Massachusetts to perform services in Massachusetts). Merz knew that Doyle would work and sell its products in Massachusetts

---

[2] Merz relies on Phillips v. Prairie Eye Center, 530 F.3d 22 (1st Cir. 2008), to argue that it did not purposefully avail itself of Massachusetts. Its reliance is misplaced. In Phillips, the defendants sought to hire a Massachusetts-based ophthalmologist to work at their Illinois ophthalmology office. Id. at 25. The defendants' only contacts with Massachusetts were (1) the receipt of a resume from the plaintiff and (2) several emails sent to the plaintiff in the course of negotiating an employment contract. Id. At no point did the defendant conduct business in Massachusetts or expect that plaintiff would do so on its behalf. See id. Here, by contrast, Merz hired Doyle for the specific purpose of working in Massachusetts to sell its medical devices to Massachusetts customers.

12

because (1) it gave her a sales area that included Massachusetts; (2) she lived approximately thirteen miles from the Massachusetts border; and (3) she worked in and communicated with Patten from Massachusetts for nearly six months. Given these facts, Merz could have reasonably anticipated that it might be haled into a Massachusetts court to defend claims involving Doyle's employment. See Carreras, 660 F.3d at 555; Access Now, 280 F. Supp. 3d at 293.

### 3. Reasonableness

The reasonableness inquiry depends on five gestalt factors: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994).

Here, the first factor favors Doyle because Merz is a national corporation that regularly conducts business in Massachusetts, so travel to the forum will not be especially burdensome. See Access Now, 280 F. Supp. 3d at 294. The second factor also favors Doyle because Massachusetts has a substantial interest in adjudicating gender discrimination and retaliation

for reporting discrimination that women who work in Massachusetts suffer. Cf. id. (recognizing Massachusetts has a strong interest in adjudicating a purported harm suffered by a blind resident). The third and fourth factors favor Doyle because her choice of forum merits deference by the Court, see Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 41 (1st Cir. 2016); Geis, 321 F. Supp. 3d at 240, and this Court is better able to interpret Massachusetts law than an out-of-state forum, cf. Nowak, 94 F.3d at 718. Finally, the fifth factor favors neither party because Massachusetts' interest in protecting workers in the Commonwealth is equivalent to or greater than North Carolina's interest in adjudicating the rights of a North Carolina corporation. See id. at 719 (stating Massachusetts' interest in protecting its citizens slightly outweighed Hong Kong's interest in protecting its businesses). Because nearly all of the gestalt factors favor Doyle, the Court finds that it would be reasonable for it to exercise personal jurisdiction over Merz.

* * *

Therefore, the Court finds that its exercise of personal jurisdiction over Merz comports with the requirements of the Due Process Clause.

### Improper Venue

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State." 28 U.S.C. § 1391(b)(1). For venue purposes, "an entity with the capacity to sue and be sued in its common name under applicable law . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction." Id. § 1391(c)(2). Because the Court has determined that it has personal jurisdiction over Merz, Merz is deemed to reside in Massachusetts for purposes of venue. See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 11 n.6 (1st Cir. 2009) (noting that a corporate defendant resided in Rhode Island for purposes of venue when the corporate defendant was subject to personal jurisdiction in Rhode Island). Therefore, venue is proper.

### Transfer of Venue

In the alternative, Merz requests that the Court transfer this case to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a).

**I.   Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought . . . ." 28 U.S.C. § 1404(a). The party seeking to

transfer the case bears the burden of persuasion "and there is a strong presumption in favor of the plaintiff's choice of forum." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001). Transfer is inappropriate "where its effect is merely to shift the inconvenience from one party to the other." Id. In addition, the Court compares the financial abilities of the parties because "the cost of litigation should be borne by the party in the best position to absorb and spread it." Id.

## II. Discussion

Merz seeks to transfer this case to the Eastern District of North Carolina because Merz's headquarters, its records, and several expected witnesses, such as Floegel and personnel from Merz's human resources department, are located there. In addition, Merz contends that North Carolina has a stronger interest than Massachusetts in adjudicating a suit between a North Carolina business and a former employee. Transfer of this case, however, would be inappropriate because the transfer would merely shift the burden of litigation from Merz to Doyle. Doyle should benefit from the presumption that favors her forum selection. In addition, Merz -- a national corporation -- is in a better position to absorb the cost of litigation than Doyle given the likely disparity in the parties' financial means. This Court is also better able than a North Carolina court to interpret Massachusetts law. And, while Floegel and the Merz

human resources team may be located in North Carolina, the two principal witnesses in this case -- Doyle and Patten -- live in Massachusetts and New Jersey, respectively. Therefore, the Court does not find that transfer of this case would serve the interests of justice.

## ORDER

For the foregoing reasons, the Court **DENIES** Merz's motion (Dkt. No. 7).

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge